# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**JULIE BOSTON**                                        **PLAINTIFF**

**v.**                                        **CAUSE NO. 1:18CV391-LG-RPM**

**DENIS RICHARD MCDONOUGH**                                        **DEFENDANT**

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the [126] Motion for Summary Judgment filed by the defendant, Denis Richard McDonough, in his official capacity as Secretary of Veterans Affairs. The parties have fully briefed the Motion. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the defendant's Motion should be granted in part and denied in part as set forth below.

## BACKGROUND

This lawsuit arises out of alleged employment discrimination in the human resources department of the VA Hospital in Biloxi, Mississippi. Plaintiff Julie Boston, a white female, has been working in the human resources field for the Department of Veterans Affairs since January 1993. (Pl.'s Resp. Ex. 5, at 14-15, ECF No. 132-5). From 2007 to 2019, Boston worked as a staffing specialist at the Biloxi VA Hospital. (*Id.* at 16). Her duties included announcing open positions at the hospital and reviewing the qualifications of applicants. (*Id.* at 16-17).

In June 2017, Boston reported alleged sexual harassment to her superiors, including Acting Human Resources Officer, Constance Ceasar. Boston claims that

Emily Taylor, a fellow human resources employee, told her that another co-worker, Dedrick Powell, had shown Taylor an explicit video. When Taylor refused to report Powell's alleged misconduct, Boston decided to make the report herself. Boston claims that Taylor was hesitant to report Powell because Taylor was being considered for a promotion and Powell had formerly worked in "the Pentad," the term used for the VA Hospital's top management department. When the human resources department investigated, Taylor denied, under oath, that Powell had shown her an explicit video, and she also denied telling Boston that Powell had done so. Powell also denied showing or sending explicit images to Taylor and other employees under oath. Boston's allegations were determined to be unfounded, and Powell was not disciplined.[1]

Boston claims that her supervisor, Acting HRO Ceasar, began retaliating against her for reporting Powell's alleged conduct. First, Boston claims that Ceasar attempted to give her a heavier workload by asking Boston to begin working as the staffing specialist for the nursing department in addition to her other assignment – staffing specialist for the behavioral health department. Boston also claims that, in July 2017, Ceasar raised her voice during a meeting and accused Boston of reporting a situation regarding a telework employee to two women who worked in

---

[1] When questioned about the Powell allegations at a deposition pertaining to this lawsuit, Taylor invoked her Fifth Amendment right to remain silent. Powell continues to deny that he showed an explicit video to Taylor, but he admitted during his deposition that he showed explicit images to other co-workers.

the human resources director's office. (*Id.* at 63-66). Boston claims that Ceasar called these two women "white bunnies" during that meeting. (*Id.* at 64-67). Boston testified that she felt threatened by Ceasar's behavior.

Boston further alleges that, between August 17, 2017, and October 2, 2017, Ceasar sent her harassing emails regarding the handling of a temporary promotion in the public affairs office. (*Id.* at 72-77). In these emails, Ceasar said that Boston was being "absolutely ridiculous," and she accused Boston of refusing to process the promotion because she was angry. (Def.'s Mot. Ex. 31, ECF No. 126-31). Boston claims that had was not able to process the promotion in a timely manner because the action had not been approved. (Pl.'s Resp., Ex. 5, at 72-73, ECF No. 132-5).

Boston further claims that, in late October 2017, Ceasar hired a less qualified person, Chiria Wiggins, to supervise Boston's work without notice or explanation. (Def.'s Mot. Ex. 14, at 22, ECF No. 126-14; Pl.'s Resp. Ex. 5, at 106-07, ECF No. 132-5). During the investigation of an EEO complaint made by Lenora Bilbo, another human resources employee, Ana Lanning testified that she had been asked to report any errors made by Bilbo so that Ceasar "could add the errors to a folder she was compiling as proof because she knew Ms. Bilbo and Ms. Boston were filing an EEO complaint against her and Ms. Wiggins." (Pl.'s Resp. Ex. 4, ECF No. 132-4). Both Wiggins and Ceasar have denied that Ceasar was keeping a folder of errors made by Bilbo and Boston.

Boston asserts that Wiggins "gaslighted" her by "'correcting' work that was not wrong" on one occasion. (Pl.'s Resp. Mem., at 7, ECF No. 133). This incident,

which occurred in early January 2018, led to a contentious email exchange between Wiggins and Boston. (Pl.'s Resp. Ex. 20, ECF No. 132-20). Wiggins reported Boston to Ceasar and others for unprofessional behavior and harassment after Boston allegedly called Wiggins, yelled at her, and hung up the phone. (*Id.*). After Boston disputed Wiggins's characterization of the phone call, Wiggins sent a lengthy email to Boston, Ceasar, and other human resources officials in which she accused Boston of creating a hostile work environment. (*Id.*).

On February 6, 2018, Ceasar requested two audits. One of the audits concerned an override that Boston performed during the hiring of human resources employee Deborah Niebauer in 2015. (Pl.'s Resp. Ex. 21, ECF No. 132-26; Pl.'s Resp. Ex. 6 at 81-84, ECF No. 132-6). Ceasar testified that she could not remember why she would have requested this audit, but she said that she believed it would have been improper for Boston to perform the override. (*Id.*). Ceasar also requested an audit of the human resources department's software logs because Wiggins alleged that Boston had looked at Wiggins's personnel records. (*Id.* at 82; Def.'s Mot. Ex. 16, ECF No. 136-2). This audit revealed that Boston had accessed the personnel records of Wiggins on three occasions. On two of the occasions, Boston claims she was assisting another employee. Boston testified that she does not recall why she accessed the records on the third occasion. The audit also revealed that Ana Lanning had accessed the employment records of Wiggins.

Boston was removed from the human resources department pending an investigation of the alleged privacy breach. Boston claims that she was transferred

to the hospital's medical media department, where she was "put on display" because her workstation was highly visible to other hospital staff. (Pl.'s Resp. Ex. 5, ECF No. 170-71, ECF No. 132-5). While she had a private office in her position as staffing specialist, she had an open desk after her reassignment. (*Id.* at 176).

On February 21, 2018, Emily Taylor notified Ceasar that Boston, Bilbo, and Deborah Niebauer, met with plans to report Ceasar for race discrimination because they believed Ceasar, a black female, treated white employees less favorably. (Pl.'s Resp. Ex. 19, ECF No. 132-19; Pl.'s Resp. Ex. 6, at 62-64, ECF No. 132-6). Ceasar filed a congressional complaint concerning this meeting on February 22, 2018. (Pl.'s Resp. Ex. 18, 22, ECF No. 132-18, 132-22). She also requested a police escort to her car on nights that she worked late because she felt threatened by the actions of Boston, Bilbo, and Niebauer. (*Id.* at 72-73). Ceasar followed up her congressional complaint with an email to two staff members of Congressman Steven M. Palazzo, Biloxi VA Human Resources executive Michael Palmier, and other employees of the hospital. Ceasar listed the following attachments to this email: Taylor's Report of Contact concerning Boston; a list of "illegal & improper recruitment actions discovered since November 2017"; "[a]n additional list of Veterans who were passed over by Lenora Bilbo"; a report by Wendy Ann Wyatt concerning Boston's alleged meeting about Ceasar; the audit revealing alleged privacy violations Boston and Lanning; the temporary reassignments of Boston and Lanning; and other documents related to Bilbo. (Pl.'s Resp. Ex. 22, ECF No. 132-22). Ceasar also forwarded the email and attachments to Greg Puckett, Dedrick Powell, and others.

(*Id.*)  Ceasar alleged in one of her emails that Boston, Bilbo, and others were engaged in a "conspiracy."  (*Id.*)

On March 1, 2018, Boston requested one year of leave under the Family Medical Leave Act.  She submitted certification from Marie Smith, a VA social worker who had been treating her for psychological issues.  In the certification, Smith stated that Boston would at times be incapable of performing her job functions due to a hostile work environment.  (Pl.'s Resp., Ex. 24, ECF No. 132-24).

On April 2, 2018, Ceasar forwarded an email to Smith and Palmier that stated Boston was taking FMLA leave that day.  The following day, Palmier asked whether Boston had been approved for FMLA, and Smith replied:

> No.  The package was put on my desk this morning.  However, it does have medical documentation to support from a VA LCSW.  Weak as crap if you ask me but not sure if we can deny.

(Pl.'s Resp. Ex. 25, ECF No. 132-25).  Ceasar responded, "My sentiments exactly . . . ."  (*Id.*).

The first page of Boston's FMLA packet reflects that Smith initially intended to recommend approval of her request, but he crossed out "approval" and circled "disapproval."  At his deposition, Smith could not recall changing his mind concerning Boston's application, but he testified that no one told him to deny her request.  (Pl.'s Resp. Ex. 2, at 43-44, ECF No. 132-2).  He placed a note on the front of her application that stated, "Recommend either disability retirement or other avenues.  Is not a hostile work environment per attached."  (Pl.'s Resp. Ex. 24, ECF No. 132-24).  Smith's signatures on the application were dated April 3, 2018, and

the note was dated April 11, 2018. During his deposition, Smith noted that Boston had been reassigned to another department, so she was no longer in a hostile work environment. (Pl.'s Resp. Ex. 2, at 18-19, ECF No. 132-2). He agreed that he would have recommended approval of her request if it had not mentioned a hostile work environment or if she had refiled her application citing other reasons for needing FMLA. (*Id.* at 17-20). Associate Medical Center Director Gregory Puckett also recommended disapproval of the FMLA request. (Pl.'s Resp. Ex. 24, ECF No. 132-24). He acknowledged at his deposition that Boston was suffering from a medical condition, but he noted that her area of work had not been declared hostile by anyone, and he could not in good faith approve FMLA for a hostile work environment that did not exist. (Pl.'s Resp. Ex. 1, at 18, ECF No. 132-1).

On April 20, 2018, a Notice of Proposed Removal was issued to Boston that included two charges: "Unauthorized Access of Personnel Records" and "Making Unfounded Statements About Other Employees." (Def's Mot. Ex. 24, ECF No. 126-24). After an investigation of the charges for unauthorized access to personnel records, Boston was suspended for three days, and Lanning was given a reprimand that would remain in her personnel file for three years. (Pl.'s Resp. Ex. 29 & 31, ECF No. 132-29, 132-31). The charge against Boston for unauthorized access to personnel records was sustained, but the charge of making unfounded statements against a co-worker was not sustained. (Pl.'s Resp. Ex. 31, ECF No. 132-31). Soon after the suspension was issued, Boston received a position with the VA in Birmingham. She currently works as a recruitment staffing specialist for the

human resources department in a telework position.  (Pl.'s Resp. Ex. 5, at 15-16, ECF No. 132-5).

Boston filed this lawsuit against the Secretary of Veterans Affairs on December 12, 2018.  She asserts claims for Title VII Retaliation, Title VII Race Discrimination, Denial of Equal Protection, First Amendment Retaliation, and Denial of Due Process.  The defendant has filed the present Motion seeking summary judgment as to each of these claims.  The Motion also seeks summary judgment as to any hostile work environment claim that Boston may be attempting to assert.

## DISCUSSION

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact, and that the movant is entitled to prevail as a matter of law on any claim.  Fed. R. Civ. P. 56.  The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Id.* at 324-25.  The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).  Factual controversies are resolved in favor of the non-moving party, but only when there is an actual controversy, that is, when both parties have

submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## I. TITLE VII RETALIATION

To state a prima facie case of retaliation Boston must show that "(1) [she] engaged in conduct protected by Title VII; (2) [she] suffered a materially adverse [employment] action; and (3) a causal connection exists between the protected activity and the adverse action." *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015). "[A]t the prima facie stage, a plaintiff can meet [her] burden of causation simply by showing close enough timing between [her] protected activity and [her] adverse employment action." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (brackets omitted). At the prima facie stage, "a time lapse of up to four months may be sufficiently close." *Feist v. La., Dep't of Just., Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). "Summary judgment is appropriate if the plaintiff cannot support all three elements." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).

Under Title VII, an employee has engaged in protected activity if she has (1) "opposed any practice made an unlawful employment practice by this subchapter," or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427–28 (5th Cir. 2000); 42 U.S.C. § 2000e–3(a). The defendant concedes that Boston engaged in protected activity when she reported Powell's alleged sexual harassment of Taylor and when she claimed she

had been subjected to a hostile work environment in her FMLA application. Boston

claims that the defendant misunderstands the nature of Boston's protected activity.

She argues that "[t]he facts show one course of steadily intensifying protected

activity and steadily intensifying retaliation. This case cannot be atomized into

isolated protected activities or isolated acts of retaliation." (Pl.'s Mem. at 12, ECF

No. 133).[2]

The defendant also argues that Boston was not subjected to a materially

adverse action. A materially adverse action is an action that would "dissuade[ ] a

reasonable worker from making or supporting a charge of discrimination."

*Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (citing

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

> The purpose of this objective standard is "to separate significant from
> trivial harms" and "filter out complaints attacking the ordinary
> tribulations of the workplace, such as the sporadic use of abusive
> language, gender-related jokes, and occasional teasing." Even when an
> adverse action is intended by the employer as retaliation, it must still
> satisfy this materiality standard.

---

[2] Boston also raised three additional instances of protected activity for the first time
in her Memorandum in Response to the defendant's Motion for Summary
Judgment: her EEO whistleblower complaint dated March 14, 2018, her opposition
to the Notice of Proposed Removal, and the filing of this lawsuit also constituted
protected activity. The defendant objects to this new argument as untimely. It is
not necessary for the Court to address the defendant's objection because there is no
indication that these activities led to any material adverse action or changed the
course of events in any negative way. If anything, it appears that the filing of
Boston's lawsuit may have resulted in the dismissal of one of the charges against
her and a lesser imposed punishment than that previously recommended.

*Id.* (internal citations omitted). When determining whether an act constitutes a material adverse action, "[c]ontext matters." *White*, 548 U.S. at 69. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.*

Boston argues that the Court should find that the following actions, constitute material adverse action on the part of the defendant: "disparaging" emails written about her to "the top of the chain of command," scrutiny of her work in a search for errors that could be used against her, the assignment of a "lower-graded employee" to check the quality of her work and harass her, her reassignment to the medical media department where she was given "menial work" and "put on display," denial of her FMLA request, the Notice of Proposed Removal, and her suspension without pay. (Pl.'s Mem. at 14-15). Since a causal connection must be established between the protected activity and any material adverse action in order to set forth a prima facie case of retaliation, it is necessary for the Court to identify which actions constituted protected activity.

Turning first to Boston's suspension without pay, a suspension can constitute a material adverse action where the plaintiff shows that she suffered physical, emotional, and economic issues as a result. *See Cabral v. Brennan*, 853 F.3d 763, 767 (5th Cir. 2017) (citing *White*, 548 U.S. at 70-73). However, a suspension does not constitute a material adverse act where the plaintiff does not demonstrate that she suffered actual harm as a result of the suspension. *Cabral*, 853 F.3d at 767.

Boston has not provided the Court with any information about her suspension; she merely notes that she had been transferred to a telework position at another VA facility around that same time that removed from the alleged hostile work environment at the Biloxi facility. Therefore, even when the suspension is considered along with the other circumstances cited by Boston, it cannot be considered a material adverse action.

The Court further finds that the critical emails written about Boston by Ceasar, and Wiggins cannot be considered material adverse actions even when considered along with Boston's other allegations. *See Stewart*, 586 F.3d at 331 ("[P]etty slights, minor annoyances, and [a] simple lack of good manners do not constitute a material adverse action because Title VII does not set forth 'a general civility code for the American workplace."). Likewise, the scrutiny to which Boston was allegedly subjected by Ceasar and Wiggins cannot be considered a material adverse action. *See, e.g, E.E.O.C. v. Bass Pro Outdoor World, LLC*, No. 4:11cv3425, 2013 WL 1124063, at *6 (S.D. Tex. Mar. 18, 2013) ("[C]lose scrutiny, denying days off, failing to alter a schedule, or assigning a heavy workload are not considered adverse actions. While it is appropriate to consider the cumulative effect of all the actions alleged, even aggregated, BPOW's responses are insufficient to allege a plausible claim of retaliation.").

The denial of Boston's FMLA application presents a more difficult question. "Federal employees with more than twelve months of service do not have a private right of action for FMLA violations." *Carlson v. White*, 133 F. App'x 144, 144-45

(5th Cir. 2005). Thus, the defendant argues that the Court does not have jurisdiction to address Boston's claim that the denial of her FMLA application was a material adverse action. The Court has not located any cases analyzing whether the denial of an FMLA application can be classified as a material adverse action in a Title VII retaliation case filed by a federal employee. Furthermore, the parties have not identified any cases that address this issue. The Court will assume without deciding that the denial of a federal employee's request for FMLA leave can be considered a material adverse action under certain circumstances. *See White*, 548 U.S. at 67 (holding that the anti-retaliation provision of Title VII "protects an individual . . . from retaliation that produces an injury or harm"). The Court will look to cases addressing whether the denial of sick leave can constitute a material adverse action for guidance.

In *Price v. Wheeler*, the Fifth Circuit held that "a single denial of leave for a specific date and time does not constitute adverse employment action," particularly since the employer had a reasonable explanation for the denial. 834 F. App'x 849, 857 (5th Cir. 2020). District courts in the District of Columbia have held that the denial of sick leave is an adverse action where the sick leave sought was either for a significant period or the plaintiff showed she suffered financial harm as a result of the denial. *Lurensky v. Wellinghoff*, 167 F. Supp. 3d 1, 17-18 (D.D.C. 2016). Although Boston requested a full year of FMLA leave, she has not alleged that the denial of FMLA leave caused her to suffer any actual harm, financial or otherwise. The Court finds that a reasonable employee would not have been deterred by a

denial of FMLA that caused no harm under these circumstances. Thus, the denial of FMLA leave was not a material adverse action.

As for Boston's reassignment to medical media, the Supreme Court has held that the question of "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case[ ] and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *White*, 548 U.S. at 71. A lateral reassignment to a position with equal pay where there is "no diminution in prestige or change in standing" and no change in duties is generally not considered a material adverse action. *See Stewart*, 586 F.3d at 332. Boston testified that she was transferred to a highly visible area of the hospital where she was repeatedly questioned about her transfer by employees from other departments of the hospital. She also claims that the work she was given was "menial" and other employees who were under investigation were transferred to locations on the hospital campus that were much more private. These circumstances create a fact question concerning whether Boston's reassignment was a material adverse action.

Next, the Court must consider the Notice of Proposed Removal issued to Boston. While some courts hold that a notice of proposed removal is not a material adverse action, others have held that a notice of proposed removal can be sufficient. *See, e.g., Jones v. Castro*, 168 F. Supp. 3d 169, 183 (D.D.C. 2016); *Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 203 (D.D.C. 2008); *Harris v. Bexar Cnty. Tex.*, No. SA-09-CV-523, 2011 WL 130235, at *2 (W.D. Tex. Jan. 2011). The Supreme Court has

clarified that the circumstances surrounding an employer's action must be considered when determining whether the employer's action would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68-69 ("[A]n act that would be immaterial in some situations is material in others."). As a result, the Court finds that it is appropriate to consider notices of proposed removals on a case-by-case basis. In the instant case, the Notice of Proposed Removal specifically references Boston's report of Dedrick Powell for sexual harassment of another employee. While the Notice also mentions other alleged conduct, a Notice of Proposed Removal that specifically mentions protected activity as part of its basis would dissuade a reasonable worker from making or supporting a charge of discrimination. In addition, the length of time that the Notice remained pending — over one year — would have a chilling effect on a reasonable worker's desire to engage in protected activity. As a result, the Notice of Proposed Removal was a material adverse action.

The defendant also argues that Boston has not set forth the final element of a prima facie case — a causal connection between the protected activity and the adverse action — because too much time had lapsed between her report of Powell and the alleged adverse action. Boston reported Powell in June 2017, and the Notice of Proposed Removal was issued on April 20, 2018. The Court finds that a temporal argument cannot prevent a finding of a causal connection because the Notice of Proposed Removal arguably reveals that Boston's report of Powell was still

at the forefront of her superiors' minds. Boston has presented a prima facie case of retaliation.

Once the plaintiff establishes a prima facie case, then the employer has the burden of production to provide "a legitimate, non-discriminatory reason" for the adverse employment action. *Brown*, 969 F.3d at 577.

> If the employer meets this burden, then the plaintiff has the burden to prove that the proffered reason is pretextual. A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that [his] employer's explanation is unworthy of credence.

*Id.* (citations and quotation marks omitted).

The defendant discovered evidence that Boston may have improperly accessed a co-worker's personnel records. Therefore, the defendant has met his burden of presenting a legitimate, non-discriminatory reason for both reassigning Boston outside the human resources department and for issuing her with a Notice of Proposed Removal.

Where, as here, the defendant meets his burden of providing a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show that the defendant's reason was pretext for a retaliatory purpose. *See Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 678 (5th Cir. 2021). "Ultimately, in order to survive a motion for summary judgment, a plaintiff must show a conflict in substantial evidence on the question of whether the employer would not have taken the adverse employment action but for the protected activity." *Brown*, 969 F.3d at 577 (citing

*Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019)) (internal quotation marks omitted).  The Notice was signed by Gregory Puckett, Associate Medical Center Director.  At his deposition, Puckett initially testified that the Notice of Removal had nothing to do with Boston reporting Dedrick Powell for showing explicit videos.  (Pl.'s Resp. Ex. 1, at 41, ECF No. 132-1).  Later in the deposition, he noted that the second charge in the Notice was related to the reporting of Powell as well as other conduct or comments made by Boston, but he could not recall what that other conduct was.  (*Id.* at 62-66).  The Notice of Proposed Removal states:

> During a fact-finding it was brought to the attention of the fact finder that you stated to Human Resource managers that a co-worker shared inappropriate messages and pictures with another member of HR staff. A fact finding was conducted by HR management at the time of the report, and there was no evidence that the sharing of inappropriate message and pictures occurred.  The issue was also raised in the March 2018 fact finding, and it was reported you informed another HR staff member, who was not a member of management and was not involved in the original fact finding, that the event occurred.  While it is the obligation of all VA staff to report misconduct, making unfounded statements about other employees is inappropriate.

(Def's Mot. Ex. 24, ECF No. 126-24).  Puckett testified that this second charge "had some influence on" his decision to recommend removal of Boston instead of a seven-day suspension.  (Pl.'s Resp. Ex. 1, at 62, ECF No. 132-1).  As a result, the Court finds that a genuine issue of material fact exists as to whether the Notice of Proposed Removal would have been issued if Boston had not reported Powell.  As for Boston's reassignment, the defendant was certainly justified in reassigning her to a position outside the human resources department while an investigation was concerning whether Boston used her human resources position to improperly access

a co-worker's private records, but Boston's testimony concerning the circumstances of other employees' reassignment compared with the circumstances of her own reassignment creates a genuine issue of material fact as to whether she has shown that the defendant's reason was a pretext for discrimination. This is particularly true since the defendant has not presented any evidence or testimony that Boston could not be reassigned to a more private and appropriate location pending the investigation. The defendant's Motion for Summary Judgment must be denied to this extent.

## II. TITLE VII RACE DISCRIMINATION

A plaintiff can prove employment discrimination through either direct or circumstantial evidence. Where, as here, the plaintiff offers only circumstantial evidence of discrimination, the Court must analyze the case using the *McDonnell Douglas* burden-shifting framework as modified and restated by the Fifth Circuit. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under the modified *McDonnell Douglas* approach, the plaintiff must first demonstrate a prima facie case of discrimination. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411-12 (5th Cir. 2007). To accomplish this, Boston must present evidence that she:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group.

*See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Boston has not presented a prima facie case of race discrimination because she has not attempted to identify a person outside her protected group who replaced her or a comparator who was treated more favorably.[3] Therefore, the defendant is entitled to summary judgment as to Boston's race discrimination claim.

## III. HOSTILE WORK ENVIRONMENT

It is questionable whether Boston is attempting to proceed with a separate hostile work environment claim. The Second Amended Complaint did not list a separate claim for hostile work environment, but it contained various allegations of harassment and mentioned a hostile work environment while discussing her FMLA application. In response to the defendant's Motion for Summary Judgment, Boston merely alleged a hostile work environment in the context of her race discrimination claim while arguing that a hostile work environment can constitute an adverse action. She did not present any arguments in opposition to the defendant's summary judgment arguments concerning race-based claim for hostile work environment. She also has not presented any argument in support of a retaliatory hostile work environment claim. As a result, the Court finds that Boston has abandoned any hostile work environment claim. *See City of Canton v. Nissan N.*

---

[3] While Ana Lanning was subjected to less punishment for unauthorized access to personnel records, Lanning and Boston are members of the same protected class.

*Amer., Inc.*, 870 F. Supp. 2d 430, 437 (S.D. Miss. 2012) ("Failure to address a claim results in abandonment thereof.").

## IV.  EQUAL PROTECTION, DUE PROCESS, AND FIRST AMENDMENT RETALIATION

Since Boston did not present any arguments in support of her constitutional claims in response to the defendant's Motion for Summary Judgment, she has abandoned those claims. *See City of Canton*, 870 F. Supp. 2d at 437. In addition, those claims are preempted because Title VII provides the exclusive remedy for employment discrimination claims raised by federal employees. *See Sapp v. Potter*, 413 F. App'x 750, 753 (5th Cir. 2011) (citing *Jackson v. Widnall*, 99 F.3d 710, 716 (5th Cir. 1996)).

## CONCLUSION

For the foregoing reasons, the defendant's Motion for Summary Judgment is granted as to Boston's race discrimination and constitutional claims. The Motion is also granted as to any quiescent hostile work environment claim. The Motion is denied as to Boston's retaliation claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [126] Motion for Summary Judgment filed by the defendant, Denis Richard McDonough is **GRANTED** as to Julie Boston's race discrimination, equal protection, due process, and first amendment retaliation claims, as well as any potential hostile work environment claim. The Motion is **DENIED** as to Boston's Title VII retaliation claim.

**SO ORDERED AND ADJUDGED** this the 22nd day of June, 2021.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE